Citation Nr: 1826254 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 08-36 838 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a low back disorder.

2. Entitlement to service connection for a left knee disorder.

3. Entitlement to an initial evaluation in excess of 10 percent for right knee patellofemoral syndrome.


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney at Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

W. R. Stephens, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1986 to June 1989. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from November 2007 and January 2014 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Veteran testified before the Acting Veterans Law Judge (AVLJ) at a February 2011 Travel Board hearing. A copy of the transcript is associated with the file.

The issues of entitlement to service connection for left knee and low back disorders have a relatively long procedural history. Most recently, they were remanded by the Board in January 2016 for further evidentiary development.

With respect to the issue of entitlement to an increased initial rating for the right knee, the Board notes that the Veteran did not submit a VA Form 9 Substantive Appeal within 60 days of the issuance of an October 2015 Statement of the Case (SOC). The Veteran's representative submitted a November 2016 Form 9 Substantive Appeal, in which she indicates that the Statement of the Case was mailed to the representative's old address. A review of the record does not disprove this assertion. There is no indication that the Veteran did not receive the Statement of the Case. However, the Board notes the Court's finding in Percy v. Shinseki, 23 Vet. App. 37 (2009), in which it held that the 60-day period in which to file a substantive appeal is not jurisdictional, and thus, VA may waive any question of timeliness in the filing of a substantive appeal. 

Under the circumstances, the Board has decided to waive the question of timeliness of the filing of the substantive appeal, assuming that the October 2015 SOC was mailed to the incorrect address for the representative and the Veteran was relying upon the representative to file the Form 9.

The issue of entitlement to an initial evaluation in excess of 10 percent for right knee patellofemoral syndrome is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. A low back disorder was not manifest during service and arthritis was not manifest within one year of separation. A low back disorder is unrelated to service.

2. A left knee disorder was not manifest during service and is unrelated to service.


CONCLUSIONS OF LAW

1. A low back disorder was not incurred in or aggravated by active service and arthritis may not be presumed to have been incurred therein. 38 U.S.C. §§ 1110, 1112, 1113, 1131 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2017).

2. A left knee disorder was not incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1112, 1113, 1131 (2012); 38 C.F.R. §§ 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duty to Notify and Assist

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

II. Service Connection

Veterans are entitled to compensation if they develop a disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110 (wartime service), 1131 (peacetime service).

To establish entitlement to service-connected compensation benefits, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service -the so-called 'nexus' requirement." Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999).

Arthritis is identified as a "chronic" disease under 38 U.S.C. §1101 and 38 C.F.R. § 3.309(a). 

"For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim." 38 CFR 3.303 (b).

Low Back

The Veteran asserts that his current low back disorders are directly related to service. Specifically, he has testified that his back disorders are the result of his MOS as a Light Wheel Vehicle Mechanic and that his symptoms began in service. At a May 2016 VA examination, the Veteran was diagnosed with degenerative arthritis of the thoracolumbar spine and sacroiliac weakness. The examiner noted a previous diagnosis of scoliosis. 

Service treatment records contain a March 1989 medical examination which revealed a normal spine upon clinical evaluation. A May 1989 note of acute medical care documents sharp lower back pain in the left side, with no further information. There is no separation examination of record. Additional service treatment records do not document any relevant complaints, treatment, diagnosis, or other manifestations of a low back disorder. 

At a December 2013 VA examination, the examiner opined that it was less likely than not that the Veteran's low back disabilities were due to his active service. The examiner cited a review of service treatment records, including the May 1989 treatment for low back pain. The examiner noted that there was no treatment of record until a post-service work related injury in 1994. 

Subsequent to the December 2013 VA opinion, the Veteran's representative submitted an internet article which she argued "served to undermine" the December 2013 examiner's opinion. The article pertained to soft tissue injuries and indicated that they could result in the tissue being more susceptible to later injury. 

To address this article, the Board remanded for a new VA medical opinion in January 2016. A May 2016 VA examiner similarly concluded that the Veteran's back disorders were less likely than not related to service. The examiner considered the Veteran's lay statements with respect to a continuity of symptoms since service and specifically addressed the internet article. The examiner noted that the article was authored by a chiropractor "and purports to recommend chiropractic manipulation as treatment post injury. It does not come from medical literature." The examiner notes that the article "propose[d] that soft tissue injuries may have long lasting effects. It makes no case for a cause and effect relationship between a remote, acute, soft tissue injury and...back degenerative joint disease occurring much later." The examiner notes the lack of post-service treatment, but does not discount the Veteran's statements with respect to continuity. In addition, the examiner cites the Veteran's post-service occupational history as an auto mechanic and later as an armored car deliverer and guard, with five hours a day on his feet, required physical training, fitness testing, and the ability to lift 50 pounds. With respect to the previously diagnosed scoliosis, the examiner notes that it is "typically regarded as congenital or developmental in origin." 

In adjudicating a claim, the Board is charged with the duty to assess the credibility and weight given to evidence. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

The probative value of a medical opinion primarily comes from its reasoning; threshold considerations are whether a person opining is suitably qualified and sufficiently informed. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). In this case, the Board accepts the May 2016 VA examiner's opinion that the Veteran's back disorders are less likely than not related to his service as highly probative medical evidence on this point. The Board notes that the examiner rendered his opinion after thoroughly reviewing the claims file and relevant medical records. The examiner noted the Veteran's pertinent history and provided a reasoned analysis of the case. See Hernandez-Toyens, 11 Vet. App. at 383; Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994) (the probative value of a physician's opinion depends in part on the reasoning employed by the physician and whether or not (or the extent to which) he reviewed prior clinical records and other evidence).

The Board has considered the lay statements of record, to include the Veteran's assertion that he has experienced a continuity of pain since service. Here, the Veteran is competent to report his observations and relate what he was told by medical professionals. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

However, the Veteran's lay evidence of onset and continuity is far less probative than the opinion of the VA professional, as the VA medical opinion is far more detailed and reasoned; thus warranting a greater probative value. The Board finds that the probative value of the general lay assertions are outweighed by the clinical evidence of record. Physical examination near the time of separation from service revealed a normal spine and musculoskeletal system and the evidence shows that the in-service documentation of low back pain was acute and transitory. The medical evidence of record is afforded greater probative value than the more general lay assertions of the Veteran. 

In addition, the Board has considered the internet article submitted by the Veteran's representative. However, the Board finds the probative value of the article to be limited under the circumstances, as it was specifically addressed by the VA examiner in rendering his opinion and the article is not specific to the Veteran's particular circumstances. In short, the internet article is not specific to the facts of the case, whereas the VA medical opinion is specific to the medical and lay evidence of record.

In sum, there is no reliable evidence linking the Veteran's degenerative arthritis of the thoracolumbar spine, sacroiliac weakness, or scoliosis to service. The contemporaneous records establish that there were no documented manifestations of arthritis in service, the documented in-service back pain was acute and transitory, the spine was physically normal near separation, there were no manifestations of arthritis within one year of separation, and arthritis was first manifest many years after separation. The Board finds the contemporaneous records to be far more probative and credible than the Veteran's report of onset, continuity and treatment.

To the extent that the Veteran's scoliosis is a congenital defect or disease, there is no indication in the record that there is either additional disability due to an in-service disease or injury superimposed upon such defect or that it underwent a permanent increase in severity as a result of active service. 38 C.F.R. §§ 3.303(c). 

Here, arthritis of the spine was not "noted" during service within the meaning of section 3.303(b). While the Board notes the Veteran's single complaint of back pain during service and his assertion that it continued after service, the Board finds that the service treatment records do not show a combination of arthritis manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Furthermore, the evidence does not establish that arthritis was manifest to a compensable degree with one year of separation. 38 C.F.R. §§ 3.307; 3.309. In essence, the evidence establishes that the spine was normal upon separation from service and the onset of arthritis occurred many years after service. 

The Board finds that the contemporaneous in-service and post-service treatment records are entitled to greater probative weight and credibility than the lay statements of the Veteran. The more probative evidence establishes that he did not have a chronic spine disorder during service or within one year of separation. Furthermore, the evidence establishes that the remote onset of degenerative arthritis of the spine is unrelated to service, to include an acute and transitory May 1989 complaint of low back pain. The Board finds that the preponderance of the evidence is against the claim and the claim must be denied. 38 U.S.C. § 5107 (b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Left Knee

The Veteran asserts that his left knee disability is the direct result of his active service. He testified that he believes it to be the result of in-service left knee injuries and physical activity, to include his previously mentioned responsibilities as a mechanic. 

At a December 2013 VA examination, the Veteran was diagnosed with chronic left knee strain. At a May 2016 VA examination, left knee pain was noted and the examiner reported that there were no current diagnosis associated with this condition. However, consistent with the decision by the United States Court of Appeals of the Federal Circuit in Saunders v. Wilkie, No. 2017-1466 (Fed. Cir. Apr. 3, 2018), the Board notes that pain alone can constitute disability. 

Service treatment records document a September 1987 complaint of left knee pain, injured while playing football. An April 1989 complaint documents left knee pain after tripping over a manhole cover. The previously mentioned March 1989 examination reveals normal lower extremities and musculoskeletal system upon clinical evaluation.

At a December 2013 VA examination, the examiner opined that it was less likely than not that the Veteran's left knee disability was related to service, to include the documented in-service injuries. The examiner notes that the in-service conditions were soft tissue injuries and treated conservatively. The examiner reports that the evidence shows the in-service injuries were acute and transitory, and that the Veteran's left knee disability is more likely attributable to his post-service occupation.

As noted with respect to the back, the Veteran's representative submitted an internet article which she argued "served to undermine" the December 2013 examiner's opinion. The article pertained to soft tissue injuries and indicated that they could result in the tissue being more susceptible to later injury. 

To address this article, the Board remanded for a new VA medical opinion in January 2016. The May 2016 VA examiner similarly concluded that the Veteran's left knee disorder was less likely than not related to service. The examiner considered the Veteran's lay statements with respect to a continuity of symptoms since service and specifically addressed the internet article. As previously noted, the examiner noted that the article was authored by a chiropractor "and purports to recommend chiropractic manipulation as treatment post injury. It does not come from medical literature." The examiner notes that the article "propose[d] that soft tissue injuries may have long lasting effects. It makes no case for a cause and effect relationship between a remote, acute, soft tissue injury and chronic knee disease...occurring much later." The examiner notes the lack of post-service treatment, but does not discount the Veteran's statements with respect to continuity. In addition, the examiner cites the Veteran's post-service occupational history, as noted above. 

In this case, the Board accepts the May 2016 VA examiner's opinion that the Veteran's left knee disability is less likely than not related to his military service as highly probative medical evidence on this point. The Board notes that the examiner rendered his opinion after thoroughly reviewing the claims file and relevant medical records. The examiner noted the Veteran's pertinent history and provided a reasoned analysis of the case. See Hernandez-Toyens, supra; Gabrielson, supra. 

The Board has again considered the lay statements of record, to include the Veteran's assertion that he has experienced a continuity of pain since service. Here, the Veteran is competent to report his observations and relate what he was told by medical professionals. Jandreau, supra. 

However, as noted above, the Veteran's lay evidence of onset and continuity is far less probative than the opinion of the VA professional, as the VA medical opinion is far more detailed and reasoned; thus warranting a greater probative value. The Board finds that the probative value of the general lay assertions are outweighed by the clinical evidence of record. Physical examination near separation from service revealed normal lower extremities and a normal musculoskeletal system. The medical evidence of record is afforded greater probative value than the more general lay assertions of the Veteran. 

As previously noted, the Board finds the probative value of the internet article submitted by the Veteran's representative to be significantly less than the May 2016 VA examiner's opinion. 

In sum, there is no reliable evidence linking the Veteran's left knee disability to service. The contemporaneous records establish that the documented left knee injuries in service were acute and transitory and the lower extremities were physically normal near separation. The Board finds the contemporaneous records to be far more probative and credible than the Veteran's report of onset, continuity and treatment.

In essence, the evidence establishes that the left knee was normal near separation from service and the onset of left knee disability is unrelated to service. The Board finds that the contemporaneous in-service and post-service treatment records are entitled to greater probative weight and credibility than the lay statements of the Veteran. The more probative evidence establishes that he did not have a chronic left knee disability during service. Furthermore, the evidence establishes that the remote onset of a left knee disability is unrelated to service, to include acute and transitory in-service soft-tissue injuries. The Board finds that the preponderance of the evidence is against the claim and the claim must be denied. 38 U.S.C. § 5107 (b) (2012); Gilbert, supra. 


ORDER

Entitlement to service connection for a left knee disorder is denied.

Entitlement to service connection for a low back disorder is denied.


REMAND

The Veteran's most recent VA examination to determine the severity of his service-connected right knee disability was in May 2016. After a review of this examination, the Board concludes that it is not entirely compliant with the provisions of 38 C.F.R. § 4.59. See Correia v. McDonald, 28 Vet. App. 158 (2016). As a result, remand is required so that the Veteran may be afforded a new VA examination that contains adequate information pursuant to Correia and 38 C.F.R. § 4.59.

Accordingly, the case is REMANDED for the following action:

1. Obtain any outstanding VA treatment records.

2. Contact the Veteran requesting any relevant private treatment records, or in the alternative, authorization to obtain any such records.

3. Afford the Veteran an appropriate VA examination to determine the current severity of his service-connected right knee. 

With respect to range of motion testing, this must be conducted on active and passive motion and in weight-bearing and non-weight-bearing conditions (pursuant to Correia v. McDonald, 28 Vet. App. 158 (2016)). If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

4. After undertaking any other development deemed appropriate, the RO should re-adjudicate the issues on appeal. If any benefit sought is not granted, the Veteran and his representative should be furnished with a supplemental statement of the case.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
J. K. BARONE
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs